# EXHIBIT A

1   Michael F. Ram, CSB #104805
    Email: mram@rocklawcal.com
2   Karl Olson, CSB #104760
    Email: kolson@rocklawcal.com
3   Susan S. Brown, CSB #287986
    Email: sbrown@rocklawcal.com
4   RAM. OLSON, CEREGHINO
    & KOPCZYNSKI LLP
5   555 Montgomery Street, Suite 820
    San Francisco, California 94111
6   Telephone: (415) 433-4949
    Facsimile: (415) 433-7311
7

8   [Additional Counsel Appear on Signature Page]

9
    *Attorneys for the Plaintiffs*
10

ENDORSED FILED
SAN MATEO COUNTY

SEP - 8 2015

Clerk of ...
By   MADELINE MASTERSON
        DEPUTY CLERK

11          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
12                          COUNTY OF SAN MATEO

13

14  AARON VAN FLEET, PAUL OVBERG, and
    JAMES LONGFIELD, individually and on          NO. CIV 535304
15  behalf of all others similarly situated,
                                                  **CORRECTED CLASS ACTION**
16                    Plaintiffs,                 **COMPLAINT FOR DAMAGES,**
                                                  **RESTITUTION, AND INJUNCTIVE**
17          v.                                    **RELIEF FOR VIOLATIONS OF:**
                                                  1. **Unfair Competition Law**
18  TRION WORLDS, INC.,                           2. **False Advertising Law**
                                                  3. **Consumers Legal Remedies Act**
19                    Defendant.                  4. **Negligent Misrepresentation**
20
                                                  **JURY TRIAL DEMANDED**
21

22                                                        BY FAX

23                          **I. INTRODUCTION**

24          Trion Worlds, Inc. ("Trion"), is the publisher of the popular video game ArcheAge.

25  ArcheAge is a massively multi-player online role-playing game ("MMO") that allows players

26  to assume the role of virtual characters which can interact with the game's immersive virtual

27  world as well as with other players.

1   MMOs generate billions of dollars in revenues every year.[1]  In the American market,
2   game developers have traditionally made money by charging players monthly subscription fees.
3   Increasingly, however, game developers and publishers are moving away from a subscription-
4   based model; instead, they permit users to access games, or certain aspects of the games, for
5   free and then collect money through "microtransactions" within the game.

6       Consistent with this trend, Trion does not require ArcheAge players to pay subscription
7   fees.  Instead, Trion aggressively markets ArcheAge as "free to play."  Trion makes money, in
8   part, by selling: (1) "Patron" status passes or subscriptions, which give players certain in-game
9   benefits and access to additional features of the game; and (2) virtual goods and property
10  through an in-game Marketplace.  Trion sold the Patron status subscriptions both individually
11  and as part of special packages known as Founder's Packs.  Founder's Packs were sold before
12  ArcheAge's official launch and included a variety of benefits, including access to the game a
13  few days before the launch, virtual currency, and virtual property.

14      Contrary to its "No Tricks, No Traps" marketing slogan, Trion has violated California
15  law by failing to provide consumers with a benefit the company promised would be included in
16  Patron status subscriptions sold before the game's official launch—namely, a 10% discount on
17  purchases in the ArcheAge in-game Marketplace.  In addition, Trion has violated California
18  law by using the ArcheAge in-game Marketplace to operate an illegal lottery.

19      Plaintiffs Aaron Van Fleet, Paul Ovberg, and James Longfield are three ArcheAge
20  players who each spent $149.99 to purchase a Founder's Pack with a Patron status subscription
21  before ArcheAge's American launch.  Plaintiffs never received the 10%-discount benefit that
22  Trion promised would be available as part of the subscription "after launch."  Plaintiffs also
23  purchased "supply crates" from the ArcheAge in-game Marketplace, which gave Plaintiffs a
24  chance to win valuable virtual property.  Trion sells these supply crates for credits, a form of

25

26   [1] *See* https://www.superdataresearch.com/market-data/payment-preferences-of-gamers-
    worldwide/ (last accessed July 14, 2015).
27

1 virtual currency that players purchase from Trion directly using real-world money.  When

2 players pay for supply crates, they have no way of knowing what the crates contain.  The

3 majority of the supply crates contain virtual items of little value, but a small number of

4 randomly-chosen crates contain virtual items that are tremendously valuable within ArcheAge

5 and that players often sell to each other for hundreds of dollars.

6       Plaintiffs bring this suit on behalf of themselves and other similarly-situated ArcheAge

7 players in order to end Trion's operation of an unlawful in-game lottery and to require Trion to

8 honor its promises to players who purchased Patron status subscriptions—either independently

9 or as part of a Founder's Pack—before launch.  They also seek restitution of money Trion

10 collected from them and members of the proposed class through Trion's deceptive and

11 unlawful business practices.

12                    **II. PARTIES**

13     1.     Plaintiff Aaron Van Fleet is a resident of Finley, Ohio, and a citizen of the state

14 of Ohio.

15     2.     Plaintiff Paul Ovberg is a resident of Madison, Wisconsin, and a citizen of the

16 state of Wisconsin.

17     3.     Plaintiff James Longfield is a resident of Fall River, Wisconsin, and a citizen of

18 the state of Wisconsin.

19     4.     Defendant Trion Worlds, Inc. is a game development studio and publisher with

20 its principal place of business in Redwood City, California.

21           **III. JURISDICTION, VENUE, AND CHOICE OF LAW**

22     5.     This Court has personal jurisdiction over Trion because Trion is headquartered

23 in the State of California and engages in continuous and systematic contacts with the State of

24 California.  Moreover, under its End User Licensing Agreement for ArcheAge ("EULA"),

25 Trion has agreed to submit to personal jurisdiction in California.

26     6.     This Court is the proper forum because the EULA provides "that any cause of

27 action relating to this Agreement shall be brought in the County of San Mateo (if under state

1   law)[.]"

2      7.      The EULA also provides that California substantive law governs disputes

3   between Trion and ArcheAge players.

4                        **IV.  FACTUAL BACKGROUND**

5   **A.    Trion Launches and Markets ArcheAge in the United States**

6      8.      Trion is a video game development studio headquartered in Redwood City,

7   California.  Trion is the American publisher of a number of online games, including Defiance,

8   Rift, Trove, and ArcheAge.

9      9.      ArcheAge was originally developed by Korean game developer XLGames.

10  Trion brought ArcheAge to the United States market, releasing it in September 2014.

11     10.     Similar to other MMO game studios, Trion operates servers which host most of

12  the code for ArcheAge's "virtual world."  Players from around the world access the virtual

13  world of the game via their personal computers, using software (called a "desktop client") that

14  they download from Trion's website.  In the virtual world, a player creates and directs a

15  character, or avatar, that can interact with other players, create "virtual items," exchange virtual

16  goods, fight virtual monsters, and collect virtual currency.

17     11.     MMO game studios have traditionally made money through monthly

18  subscriptions under which a player will typically pay a monthly fee to the game developer or

19  publisher in exchange for the right and license to use a desktop software client to access the

20  game.

21     12.     ArcheAge is different, and part of a growing trend, in that Trion does not charge

22  a monthly subscription fee to access the game, and in fact aggressively markets the game as

23  "free" throughout its website and marketing materials.  For example, at the top of each page on

24  Trion's ArcheAge website is a prominent banner with the words "PLAY for FREE."  Similarly,

25  the top result in a Google search for "ArcheAge" is an advertisement paid for by Trion and

26  titled "ArcheAgeGame.com – ArcheAge – Free to Play."

27     13.     Before ArcheAge's official launch in North America on September 16, 2014,

1   the game was available to American players in "alpha" and "beta" testing forms.  During this

2   pre-launch time period, Trion marketed and advertised "Patron" status subscriptions to players,

3   including Plaintiffs, either as an individual item or as part of the Founder's Packs.

4          14.    In addition to a Patron subscription for a set period of time, Founder's Packs

5   included access to the game a few days before the launch, virtual currency, and virtual

6   property.

7   **B.    Trion Sells Subscription Packages and Virtual Property**

8          15.    ArcheAge can be played for free but to access many aspects of the game,

9   players must purchase a monthly subscription that confers "Patron" status.  Trion promotes

10  Patron subscriptions as "the best way to get the most out of ArcheAge" and "[p]acked with

11  exclusive features and expanded benefits in-game[.]"  For example, the ability to own virtual

12  farms and houses in ArcheAge is reserved for players with Patron status.

13         16.    As of the date of the filing of this Complaint, a one-month Patron subscription

14  costs $14.99; a three-month Patron subscription costs $38.97; and a six-month Patron

15  subscription costs $65.94.



---

CIV 535304 -- CORRECTED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND
INJUNCTIVE RELIEF                                                                    5

1  17. ArcheAge players can access a virtual in-game storefront ("Marketplace") that

2 allows players to purchase virtual items to improve and enrich the players' characters and

3 overall gaming experience.  For example, players can purchase different types of virtual

4 clothing, animal "mounts," "gliders," and other items for their virtual character to use in the

5 game.

6  18. Items such as mounts and gliders are particularly valuable because they allow a

7 character to travel across ArcheAge's vast virtual world far more quickly than is otherwise

8 possible.

9  19. Players can and do sell such items for cash on private exchanges operated

10 outside of ArcheAge.  For example, the "legendary Racing Zebra" mount has been sold for up

11 to $250.

12  20. Trion profits from sales in the ArcheAge Marketplace by selling to players for

13 U.S. currency the virtual currency required to make purchases in the Marketplace.

14  21. The three major forms of currency within ArcheAge are:

15   a. Credits: Players purchase credits on a website owned and operated by

16 Trion.  Credits can be used to purchase virtual goods from the ArcheAge Marketplace.  Players

17 can also use credits to buy "non-recurring" Patron passes on the Trion website.  As of the date

18 of the filing of this Complaint, Trion was selling 750 credits for $5.00; 3,250 credits for $20.00;

19 8,500 credits for $50.00; and 18,500 credits for $100.  Credits cannot be directly exchanged

20 between players within ArcheAge.

21 //

22 //

23 //

24 //

25 //

26 //

27 //



b. **Apex:** Players can purchase Apex, which is a virtual coin, through the Trion website. Each Apex costs $10.00. Players can redeem Apex for credits in the game. Players can also sell Apex to other players in the game through the auction house for Gold.

1        c.    <u>Gold</u>: Gold is a virtual currency that players earn by playing ArcheAge.

2  Gold is not available for sale directly through Trion's website. Players can buy items from

3  each other in ArcheAge using Gold. These in-game transactions are facilitated by Trion

4  through ArcheAge's "auction houses." Some players also sell Gold through online exchanges

5  outside of ArcheAge, which are not operated by Trion.

6  **C.    Trion's Misleading Advertising Regarding Patron Status Subscriptions**

7        22.    In an effort to induce players to purchase subscriptions before the launch of

8  ArcheAge in the United States in September 2014, Trion advertised Patron status subscriptions

9  both individually and as part of three Founder's Packs. Trion represented that players with

10  Patron status would receive a "10% Discount on Marketplace purchases (available after

11  launch)." For example, items with a stated cost of 750 credits (equivalent to $5.00) would only

12  cost 675 credits (roughly equivalent to $4.50) for players who bought Patron status

13  subscriptions.



23.    On its page announcing the Founder's Packs and promoting Patron status, Trion also represented that there are "No Tricks, No Traps" associated with ArcheAge and in-game sales.



24.    As a result of Trion's advertisements, players rushed to buy Patron status subscriptions before launch, either individually or as part of the Founder's Packs.

25.    However, when the game launched, the ArcheAge Marketplace did not grant a 10% discount to players who had purchased Patron status subscriptions before launch, whether individually or as part of the Founder's Packs.

26.    In response to complaints, Trion told players they "misinterpreted" Trion's advertisement. According to Trion, its representation that the 10% discount would be "available after launch" did not mean "at" launch. Rather, it meant "some indeterminate point after launch."

1    27.    The community of players disagreed.  The 10% discount misrepresentation has

2   garnered press and outrage in the gaming community.  For example, on the official ArcheAge

3   message board (operated by Trion), a 170-page thread contains numerous complaints from

4   players who feel like they were "defrauded."  (*See*

5   http://forums.archeagegame.com/showthread.php?56603--No--10--Discount--on--Marketplace-

6   -Purchases.)

7    28.    Players have also posted hundreds of complaints on the online forum Reddit.

8   (*See*

9   http://www.reddit.com/r/archeage/comments/2gx5vr/no_more_10_discount_on_marketplace_p

10   urchases/.)

11    29.    Massively.com, an online gaming magazine, received the following comment

12   from Trion officials:

13       When we were initially deciding on the benefits for Patron status,
14       one thing we really liked was the idea of a 10% Marketplace
        discount being a part of the package. We knew that the store
15       functionality around doing so (percent discounts) was a stretch
        goal for the developer, and we saw this as a feature that would be
16       added "after launch" which is how it's been described on the
17       patron page. Unfortunately, that brief wording led many to
        believe we meant "at launch".

18       As such, we've been working with the developer to find a good
19       answer for players in the interim, and continue working on it.
        Getting this resolved in the most generous way possible remains
20       extremely important to us and in the spirit of transparency we'd
        rather confirm that we're still on it rather than go silent on the
21       subject. We are currently working with XLGAMES to come up
        with a solution to implement the 10% discount or an equivalent.
22       We can't promise exactly how this bonus for Patrons will be
23       implemented yet, but we can say it will be retroactive. This is an
        important topic to both Trion and XLGAMES and we won't let
24       up till we have a solution.

25

26   (*See* http://massively.joystiq.com/2014/10/09/trion--responds--to--archeages--10--percent-

27   -patron--discount--controve/.)

---

1       30.    In or around November 2014, Trion told players that it was providing an

2   "equitable solution" to the problem.  Trion promised to give players who had purchased credit

3   packs a 10% "bonus" on those credits.



16       31.    This purported "equitable solution" was inadequate in numerous respects.  First,

17   credits that players received through the purchase of Founder's Packs were expressly excluded

18   from the "bonus" program.  Second, any player who had ceased playing the game before the

19   purported "solution" did not receive any benefit from it.  Third, players who obtained credits

20   through the purchase or exchange of Apex and used those credits to purchase items in the

21   Marketplace received no compensation.  Fourth, a 10% "bonus" in credits is not equivalent to a

22   10% discount on the purchase price of items, which is what Trion advertised, because a 10%

23   bonus is the equivalent of a 9.1% discount.

24   **D.**    **Trion's Unlawful Lottery**

25       32.    When players spend credits in the ArcheAge Marketplace to purchase most

26   virtual items—for example, clothing or tools for their character—the virtual items are sent to

27   the player (in-game) for immediate use.

1    33.    But the ArcheAge Marketplace also sells "supply crates" for varying amounts of

2    credits, typically between 420 and 490 credits.  A player can purchase 500 credits from Trion

3    for roughly $2.70–$3.30, depending on how many credits are being purchased at once.  When a

4    player buys a supply crate, the player does not know what virtual items the crate contains.

5    Trion describes the supply crates as a "random selection" of items and entices players to buy

6    the crates by offering players a "chance" to get a valuable virtual item in randomly selected

7    supply crates (the "Rare Prize").

8



9

10

11

12

13

14

15

16

17

18

19

20

21

22    34.    Only after purchasing the supply crate can the player open the crate and find out

23    what is inside.

24    35.    These supply crates are akin to sealed packages of baseball cards that offer

25    purchasers a chance to obtain a valuable card autographed by a star player.

26    36.    The Rare Prize is usually a coveted virtual item that is tremendously powerful

27    within the game, allowing the player to progress more quickly.  For example, a Rare Prize

1    offered in the past was a virtual "legendary" Zebra mount which enabled a player to travel

2    within the game at high speeds. These types of items are highly valued, and may be bought and

3    sold for cash on online exchanges outside of the game.

4           37.    Trion does not disclose how frequently players win these valuable Rare Prizes.

5           38.    Many ArcheAge players have spent more than $1,000 each to purchase supply

6    crates that offered the chance at a Rare Prize. Many players have expressed in online forums

7    that they feel they were cheated by Trion's sale of supply crates. For example, in January

8    2015, a player posted on Trion's public forum a message board thread titled, "Whelp this is

9    why gambling is illegal online." Several users complained about the amounts they spent on

10   supply crates and Trion's entire business model (e.g., "spent almost 15k creds and only got

11   about 500G worth of useless junk"). A true and correct copy of the thread is attached hereto

12   as Exhibit A.

13   **E.    Aaron Van Fleet Is an ArcheAge Player Who Purchased a Founder's Pack and**

14   **       Supply Crates**

15          39.    Aaron Van Fleet set up a Trion account and began playing ArcheAge in

16   approximately May 2014.

17          40.    Before the official launch of ArcheAge, Mr. Van Fleet purchased an "Archeum"

18   Founder's Pack from Trion for $149.99. This Founder's Pack included a Patron status

19   subscription.

20          41.    In purchasing the Patron status subscription as part of a Founder's Pack, Mr.

21   Van Fleet relied on Trion's representation that he would receive a 10% discount on purchases

22   in the ArcheAge Marketplace.

23          42.    Between approximately September 2014 and December, Mr. Van Fleet used

24   credits to purchase virtual items in the ArcheAge Marketplace. Trion failed to provide a 10%

25   discount on the price of these items.

26          43.    In addition, in September 2014, Mr. Van Fleet spent approximately 490 credits

27   to purchase a supply crate. Mr. Van Fleet purchased the supply crate with the hope of winning

1    a Rare Prize.

2    F.    **Paul Ovberg Is an ArcheAge Player Who Purchased a Founder's Pack and Supply**
3          **Crates**

4          44.    Paul Ovberg set up a Trion account and began playing ArcheAge in
5    approximately April 2014.

6          45.    Before the official launch of ArcheAge, Mr. Ovberg purchased an "Archeum"
7    Founder's Pack from Trion for $149.99.  This Founder's Pack included a Patron status
8    subscription.

9          46.    In purchasing the Patron status subscription as part of a Founder's Pack, Mr.
10   Ovberg relied on Trion's representation that he would receive a 10% discount on purchases in
11   the ArcheAge Marketplace.

12         47.    Between approximately April 2014 and September 2014, Mr. Ovberg played
13   ArcheAge approximately twenty-five hours per week.

14         48.    In September 2014, Mr. Ovberg used credits to purchase virtual items in the
15   ArcheAge Marketplace.  He did not receive a 10% discount on the price of these items.

16         49.    In addition, Mr. Ovberg spent thousands of credits to purchase supply crates.

17         50.    Mr. Ovberg purchased the supply crates with the hope of winning Rare Prizes.

18   G.    **James Longfield Is an ArcheAge Player Who Purchased a Founder's Pack and**
19         **Supply Crates**

20         51.    James Longfield set up a Trion account and began playing ArcheAge in
21   approximately June 2014.

22         52.    Before the official launch of ArcheAge, Mr. Longfield purchased an "Archeum"
23   Founder's Pack from Trion for $149.99.  This Founder's Pack included a Patron status
24   subscription.

25         53.    In approximately October 2014, Mr. Longfield purchased additional credits on a
26   website owned and operated by Trion.

27         54.    In purchasing the Patron status subscription as part of a Founder's Pack, Mr.

1 | Longfield relied on Trion's representation that he would receive a 10% discount on purchases

2 | in the ArcheAge Marketplace.

3 |      55.    Between approximately June 2014 and December 2014, Mr. Longfield used

4 | credits to purchase virtual items in the ArcheAge Marketplace. He did not receive a 10%

5 | discount on the price of these items.

6 |      56.    Mr. Longfield spent thousands of credits to purchase supply crates.

7 |      57.    Mr. Longfield purchased the supply crates with the hope of winning Rare Prizes.

8 | **V. CLASS ACTION ALLEGATIONS**

9 |      58.    Plaintiffs bring this action under California Code of Civil Procedure Sections

10 | 382 and 1781 on behalf of themselves and two national Classes defined as:

11 |           **Discount Class**: All persons in the United States who purchased

12 |           an ArcheAge Patron status subscription before launch, either

          individually or as part of a Founder's Pack, and purchased items

13 |           in the ArcheAge Marketplace while maintaining Patron status.

14 |           **Lottery Class**: All persons in the United States who have

          purchased at least one supply crate in the ArcheAge

15 |           Marketplace.

16 |           Excluded from the Classes are Trion, its legal representatives,

17 |           officers, directors, assigns, and successors, and any entity in

          which Trion has a controlling interest. Also excluded is the

18 |           judge to whom this case is assigned and any member of the

          judge's immediate family or court staff.

19 |

20 |      59.    This action is properly maintained as a class action because there is a well-

21 | defined community of interest in the litigation and the proposed class is easily ascertainable.

22 |      60.    Ascertainable Classes: The definitions of the Classes are clear, and members of

23 | the Classes are easily identifiable on the basis of objective information. Trion maintains

24 | account records for players, which include their names, email addresses, addresses, and

25 | purchasing history.

26 |      61.    Numerosity: Although the size of the each Class is uncertain, Plaintiffs are

27 | informed and believe that each of the Classes include tens of thousands, if not hundreds of

1  thousands, of members.  Shortly after ArcheAge's official launch, Trion announced that more

2  than two million players had opened accounts to play the game.

3      62.    Commonality and Predominance: There are numerous questions of law and fact

4  common to Plaintiffs and each Class that predominate over any questions requiring individual

5  analysis.

6      63.    The predominant questions common to the Discount Class include:

7          a.    Whether Trion's advertisement of the 10% discount in connection with

8  its promotion of Patron status subscriptions before launch was false;

9          b.    Whether Trion's representation that the 10% discount would be available

10  "after launch" to players whose purchased a Patron status subscription before launch violates

11  the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*,

12  because it violates the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code

13  § 1770(a)(17);

14          c.    Whether Trion made false or misleading statements about the existence

15  of price reductions in violation of the UCL and the CLRA, Cal. Civ. Code § 1770(a)(13), when

16  it advertised the 10% discount in connection with the sale of Patron status subscriptions before

17  launch, whether individually or as part of the Founder's Packs;

18          d.    Whether Trion's advertisement of the 10% discount as a benefit

19  associated with Patron status and the Founder's Packs, coupled with Trion's failure to provide

20  the discount, was deceptive and unfair in violation of the UCL, Cal. Bus. & Prof. Code

21  §§ 17200 *et seq.*;

22          e.    Whether Trion ever provided to players who purchased Patron status

23  subscriptions before launch, either individually or as part of the Founder's Packs, the 10%

24  discount advertised; and

25          f.    Whether Plaintiffs and the Discount Class are entitled to damages,

26  equitable relief, and injunctive relief.

27      64.    The predominant questions common to the Lottery Class include:

1       a.     Whether the money consumers pay to purchase supply crates constitutes

2  "valuable consideration" under California's illegal lottery statute, Cal. Penal Code § 319;

3       b.     Whether the virtual items Trion distributes in supply crates are

4  "property" for purposes of California's illegal lottery statute, Cal. Penal Code § 319;

5       c.     Whether Trion distributes that property by "chance" for purposes of

6  California's illegal lottery statute, Cal. Penal Code § 319; and

7       d.     Whether Plaintiffs and the Lottery Class are entitled to damages,

8  equitable relief, and injunctive relief.

9      65.    Typicality: Plaintiffs' claims are typical of those of the members of the

10  respective Classes.  Trion made the same representations to Plaintiffs and the Discount Class

11  members regarding the 10% discount that would come with the purchase of a Patron status

12  subscription before launch.  Members of the Discount Class subsequently made purchases in

13  the ArcheAge Marketplace but did not receive the promised discount.  Plaintiffs and members

14  of the Lottery Class purchased supply crates, which are effectively the tickets in Trion's illegal

15  lottery.  Plaintiffs' claims and the claims of the respective Classes are based on the same legal

16  theories and arise from the same unlawful and willful conduct, resulting in the same injury to

17  Plaintiffs and members of the Classes.

18      66.    Adequacy: Plaintiffs can adequately represent the Classes.  Plaintiffs have no

19  interests that conflict with members of the Classes, and Plaintiffs are not subject to unique

20  defenses.  Plaintiffs are committed to ending Trion's unfair and unlawful business practices.

21  Plaintiffs have retained experienced and competent class counsel.  Plaintiffs have also retained

22  counsel with specialized experience in digital technology.  Counsel have the knowledge,

23  experience, and financial resources necessary to prosecute this action on behalf of the Classes.

24      67.    Superiority: Plaintiffs and members of the Classes have all suffered and will

25  continue to suffer harm and damages as a result of Trion's unlawful and wrongful conduct.  A

26  class action is superior to other available methods for the fair and efficient adjudication of the

27  controversy.  Absent a class action, most members of the Classes would likely find the cost of

1    litigating their claims prohibitively high, and would therefore have no effective remedy at law.

2    Because of the relatively small size of the claims of members of the Classes, it is likely that few

3    members could afford to seek legal redress for Trion's misconduct.  Thus, absent a class action,

4    members of the Classes will continue to incur damages, and Trion's deceptive and unlawful

5    business practices will continue.  Class treatment of common questions of law and fact is also

6    superior to multiple individual actions or piecemeal litigation in that it conserves the court's

7    and litigants' resources, and promotes consistency and efficiency of adjudication.

8                                        **VI.  CLAIMS**

9                                  **FIRST CAUSE OF ACTION**

10   **(Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1770 - On Behalf of the Discount Class)**

11

12       68.    Plaintiffs incorporate by reference all preceding paragraphs.

13       69.    Trion's sales of Patron status subscriptions are transactions that resulted in the

14   sale of goods or services to a consumer.  Cal. Civ. Code § 1770(a).  As reflected in the

15   contracts of adhesion it presented to players, Trion provides a wide range of services along with

16   the software it provides.  This includes auction management, community and rules

17   development, and continuous modification of the game itself.

18       70.    Under the CLRA, it is unlawful to advertise goods or services with intent to sell

19   them not as advertised; make a false or misleading statement about the existence of price

20   reductions; or represent that a consumer will receive a discount if the earning of the discount is

21   contingent on an event to occur subsequent to the consummation of the transaction.  Cal. Civ.

22   Code § 1770(a)(9), (13), (17).

23       71.    Trion's advertisement of a 10% discount on purchases in the ArcheAge

24   Marketplace to players who bought Patron status subscriptions before launch, either

25   individually or as part of the Founder's Packs, coupled with its failure to provide the promised

26   discount, violates each of these provisions of the CLRA:

27           a.    Trion advertised the Patron status subscriptions as including a 10%

---

CIV 535304 – CORRECTED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF                                                                    18

1  discount on purchases in the ArcheAge Marketplace, but Trion failed to provide the discount,

2  in violation of Section 1770(a)(9).

3            b.    Trion made false or misleading statements about the existence of the

4  10% discount when Trion promised the discount but failed to provide it, in violation of Section

5  1770(a)(13).

6            c.    Trion advertised the discount but made it contingent on an event to occur

7  after the sale of the Patron status subscriptions (i.e., "after launch"), in violation of Section

8  1770(a)(17).

9      72.    In conjunction with filing this Complaint, on September 3, 2015, Plaintiffs'

10  Counsel mailed to Defendant, by certified mail, return receipt requested, the written notice

11  required by Civil Code §1782(a).  Should Defendant fail to respond within thirty days,

12  Plaintiffs will amend to seek damages under the CLRA.

13      73.    Plaintiffs bring this claim in furtherance of the public interest. They seek no

14  more relief for themselves than they seek for all members of the Discount Class.

**SECOND CAUSE OF ACTION**
**(False Advertising Law: Failure to Provide Advertised Discounts - On Behalf of the**
**Discount Class)**

18      74.    Plaintiffs incorporate by reference all preceding paragraphs.

19      75.    The False Advertising Law prohibits any unfair, deceptive, untrue, or

20  misleading advertising.  Cal. Bus. & Prof. Code §§ 17500 *et seq.*

21      76.    Trion used false and misleading advertising to sell Patron status subscriptions

22  and Founder's Packs to ArcheAge players before the game's launch and then failed provide the

23  promised 10% discount on purchases in the ArcheAge Marketplace.

24      77.    Plaintiffs and members of the Discount Class reasonably relied on Trion's

25  statements regarding the benefits associated with the purchase of Patron status subscriptions

26  before launch. The promised 10% discount was a material term that would induce a reasonable

27  consumer to buy a Patron status subscription before launch. Trion failed to provide the

1    promised discount. But for Trion's misrepresentations and omissions regarding the promised

2    discount, Plaintiffs would not have purchased Patron status subscriptions or would have paid

3    less for them.

4         78.    Trion knew or should have known that its promise to provide the 10% discount

5    was false, since it did not have the capability to offer the 10% discount at the time the statement

6    was made.

7         79.    Trion's statement that the 10% discount would be "available after launch" is

8    also misleading, in that Trion claimed that this statement meant the discount would be available

9    "at some indeterminate point after launch," but a reasonable consumer would expect the

10   statement to mean "available immediately after launch."

11        80.    Plaintiffs and the members of the Discount Class are entitled to all available

12   relief under Cal. Bus. & Prof. Code § 17535, including restitution and injunctive relief.

13        81.    Plaintiffs bring this claim in furtherance of the public interest. They seek no

14   more or less relief for themselves than they seek for all members of the Discount Class.

15                                    **THIRD CAUSE OF ACTION**
16          **(Unlawful Business Practices in Violation of the UCL: Failure to Provide Advertised
                             Discounts - On Behalf of the Discount Class)**
17

18        82.    Plaintiffs incorporate by reference all preceding paragraphs.

19        83.    The California Unfair Competition Law ("UCL") prohibits acts of unfair

20   competition, including business practices that are unlawful, unfair, or fraudulent. Cal. Bus. &

21   Prof. Code §§ 17200 *et seq.*

22        84.    A business practice that violates any other statute is an unlawful business

23   practice under the UCL.

24        85.    Trion's sale of Patron status subscriptions before launch, both individually and

25   as part of the Founder's Packs, was unlawful under the UCL because the sales violated the

26   CLRA and the False Advertising Law as set forth in detail in Plaintiffs First and Second Causes

27   of Action.

1    86.    Trion's sales of Patron status subscriptions are transactions that resulted in the
2    sale of goods or services to a consumer. Cal. Civ. Code § 1770(a).

3    87.    Under the CLRA, it is unlawful to advertise goods or services with intent to sell
4    them not as advertised; make a false or misleading statement about the existence of price
5    reductions; or represent that a consumer will receive a discount if the earning of the discount is
6    contingent on an event to occur subsequent to the consummation of the transaction. Cal. Civ.
7    Code § 1770(a)(9), (13), (17).

8    88.    Trion's advertisement of a 10% discount on purchases in the ArcheAge
9    Marketplace to players who bought Patron status subscriptions before launch, either
10   individually or as part of the Founder's Packs, coupled with its failure to provide the promised
11   discount, violates each of these provisions of the CLRA:

12          a.    Trion advertised the Patron status subscriptions as including a 10%
13   discount on purchases in the ArcheAge Marketplace, but Trion failed to provide the discount,
14   in violation of Section 1770(a)(9).

15          b.    Trion made false or misleading statements about the existence of the
16   10% discount when Trion promised the discount but failed to provide it, in violation of Section
17   1770(a)(13).

18          c.    Trion advertised the discount but made it contingent on an event to occur
19   after the sale of the Patron status subscriptions (i.e., "after launch"), in violation of Section
20   1770(a)(17).

21   89.    Advertising that is false and misleading is unfair under the California UCL.

22   90.    False and misleading statements of fact include omissions of material fact that,
23   by the exercise of reasonable care, should be known to affect the average consumer's decision
24   as to whether to purchase a product or service.

25   91.    Trion used false and misleading advertising promising a discount to purchasers
26   in order to sell Patron status subscriptions to ArcheAge players before the game's launch and
27   then failed to provide the promised 10% discount on purchases in the ArcheAge Marketplace.

92.    Plaintiffs and the Discount Class relied on Trion's statements regarding the benefits associated with the purchase of Patron status subscriptions before launch. But for Trion's misrepresentations and omissions, Plaintiffs and any reasonable consumer would not have purchased Patron status subscriptions, or would have paid less for them. The promised 10% discount was a material term that would induce any reasonable consumer to buy a Patron status subscription before launch. Trion failed to provide the promised discount.

93.    Trion's misleading statements and failure to disclose that the 10% discount would not be available until an indeterminate point in the future constitute false and misleading statements to the public.

94.    Plaintiffs and the Discount Class lost money or property as a result of Trion's violations of the UCL when they paid Trion for the Patron status subscriptions purchased before launch, whether individually or as part of the Founder's Packs.

95.    Plaintiffs, members of the Discount Class, and the general public are entitled to all relief available under the UCL, including restitution and injunctive relief.

96.    Plaintiffs and the Discount Class are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure section 1021.5.

97.    Plaintiffs bring this claim in furtherance of the public interest. They seek no more or less relief for themselves than they seek for all members of the Discount Class.

### FOURTH CAUSE OF ACTION
**(Unfair Business Practices in Violation of the UCL: Failure to Provide Advertised Discounts - On Behalf of the Discount Class)**

98.    Plaintiffs incorporate by reference all preceding paragraphs.

99.    The California Unfair Competition Law ("UCL") prohibits acts of unfair competition. Cal. Bus. & Prof. Code §§ 17200 *et seq.*

100.    Advertising that is false and misleading is unfair under the California UCL.

101.    False and misleading statements of fact include omissions of material fact that,

1   by the exercise of reasonable care, should be known to affect the average consumer's decision
2   as to whether to purchase a product or service.

3       102.   Trion used false and misleading advertising promising a discount to purchasers
4   in order to sell Patron status subscriptions to ArcheAge players before the game's launch and
5   then failed to provide the promised 10% discount on purchases in the ArcheAge Marketplace.

6       103.   Plaintiffs and the Discount Class relied on Trion's statements regarding the
7   benefits associated with the purchase of Patron status subscriptions before launch. But for
8   Trion's misrepresentations and omissions, Plaintiffs and any reasonable consumer would not
9   have purchased Patron status subscriptions, or would have paid less for them. The promised
10  10% discount was a material term that would induce any reasonable consumer to buy a Patron
11  status subscription before launch. Trion failed to provide the promised discount.

12      104.   Trion's misleading statements and failure to disclose that the 10% discount
13  would not be available until an indeterminate point in the future constitute false and misleading
14  statements to the public.

15      105.   Plaintiffs and the Discount Class lost money or property as a result of Trion's
16  violations of the UCL when they paid Trion for the Patron status subscriptions purchased
17  before launch, whether individually or as part of the Founder's Packs.

18      106.   Plaintiffs, members of the Discount Class, and the general public are entitled to
19  all relief available under the UCL, including restitution and injunctive relief.

20      107.   Plaintiffs and the Discount Class are entitled to recover reasonable attorneys'
21  fees, costs, and expenses incurred in bringing this action under California Code of Civil
22  Procedure section 1021.5.

23      108.   Plaintiffs bring this claim in furtherance of the public interest. They seek no
24  more or less relief for themselves than they seek for all members of the Discount Class.

25                          **FIFTH CAUSE OF ACTION**
26          **(Negligent Misrepresentation - On Behalf of the Discount Class)**

27      109.   Plaintiffs incorporate by reference all preceding paragraphs.

110.   Trion negligently misrepresented to the public, including Plaintiffs and the Discount Class, that ArcheAge players who purchased Founder's Packs or Patron status before the game's official launch would receive a 10% discount on all purchases in the game's Marketplace.

111.   Trion negligently misrepresented to the public, including Plaintiffs and the Classes, that it operates a "No Tricks, No Traps" sales model.

112.   Trion made these misrepresentations with the intention to induce Plaintiffs and members of the Discount Class to buy Patron subscriptions and Founder's Packs.

113.   Plaintiffs and members of the Discount Class reasonably relied on Trion's advertising representations and, in reliance on them, paid Trion for Founder's Packs and Patron subscriptions. The facts misrepresented by Trion were important and material, both to Plaintiffs and to any reasonable consumer.

114.   Trion made the misrepresentations alleged herein when it knew or should have known that they were untrue because Trion did not develop or make available a means of providing the 10% discount before advertising it.  Trion had no reasonable basis for believing its representations were true.

115.   As a proximate result of Trion's negligent misrepresentations, Plaintiffs and the Discount Class incurred damages, including but not limited to the amounts they paid to Trion to purchase items in the Marketplace without the promised discount.

116.   Plaintiffs bring this claim in furtherance of the public interest.  They seek no more or less relief for themselves than they seek for all members of the Discount Class.

**SIXTH CAUSE OF ACTION**
**(Unlawful Business Practices in Violation of the UCL: Illegal Lottery - On Behalf of the Lottery Class)**

117.   Plaintiffs incorporate by reference all preceding paragraphs.

118.   California Penal Code section 319 defines a lottery as follows:

1   
2   
3   
4   
5   

> A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known.

6   119.   California Penal Code section 320 provides that "every person who contrives,

7   prepares, sets up, proposes, or draws any lottery is guilty of a crime."

8   120.   Section 321 makes it a crime to sell or otherwise convey the chance to win a

9   prize in a lottery. California Penal Code section 321 provides:

10   
11   
12   
13   
14   

> Every person who sells, gives, or in any manner whatever, furnishes or transfers to or for any other person any ticket, chance, share, or interest, or any paper, certificate, or instrument purporting or understood to be or to represent any ticket, chance, share, or interest in, or depending upon the event of any lottery, is guilty of a misdemeanor.

15   121.   Section 322 similarly makes it a crime for any person to assist with a lottery.

16   122.   Trion's sale of supply crates constitutes an illegal lottery. Trion distributes

17   valuable property, in the form of Rare Prizes, by chance and for consideration.

18   123.   Plaintiffs and the Lottery Class lost money or property as a result of Trion's

19   violations of the UCL when they spent credits in the ArcheAge Marketplace to buy supply

20   crates. Those credits were in turn purchased from Trion for money.

21   124.   The UCL provides that a court may order equitable relief, including injunctive

22   relief and restitution, to affected members of the general public as remedies for any violations

23   of the UCL.

24   125.   Plaintiffs, members of the Lottery Class, and the general public are entitled

25   under the UCL to enjoin Trion's unlawful practices and obtain restitution of all funds obtained

26   by Trion through these unlawful acts and practices.

27   126.   Plaintiffs, members of the Lottery Class, and the general public are entitled to all

1   relief available under the UCL, including restitution and injunctive relief.

2       127.    Plaintiffs and the Lottery Class are entitled to recover reasonable attorneys' fees,

3   costs, and expenses incurred in bringing this action under California Code of Civil Procedure

4   section 1021.5.

5       128.    Plaintiffs bring this claim in furtherance of the public interest.  They seek no

6   more or less relief for themselves than they seek for all members of the Lottery Class.

7                           **SEVENTH CAUSE OF ACTION**

8   **(Unfair Business Practices in Violation of the UCL: Illegal Lottery - On Behalf of the**
    **Lottery Class)**

9

10      129.    Plaintiffs incorporate by reference all preceding paragraphs.

11      130.    Trion's sale of supply crates constitutes an illegal lottery as set forth in

12  Plaintiffs' Sixth Cause of Action.

13      131.    Trion's operation of an illegal lottery is unfair because it violates California's

14  established public policy against unauthorized lotteries.

15      132.    Plaintiffs and the Lottery Class lost money or property as a result of Trion's

16  violations of the UCL when they spent credits in the ArcheAge Marketplace to buy supply

17  crates.  Those credits were in turn purchased from Trion for money.

18      133.    The UCL provides that a court may order equitable relief, including injunctive

19  relief and restitution, to affected members of the general public as remedies for any violations

20  of the UCL.

21      134.    Plaintiffs, members of the Lottery Class, and the general public are entitled

22  under the UCL to enjoin Trion's unlawful practices and obtain restitution of all funds obtained

23  by Trion through these unlawful acts and practices.

24      135.    Plaintiffs, members of the Lottery Class, and the general public are entitled to all

25  relief available under the UCL, including restitution and injunctive relief.

26      136.    Plaintiffs and the Lottery Class are entitled to recover reasonable attorneys' fees,

27  costs, and expenses incurred in bringing this action under California Code of Civil Procedure

1   section 1021.5.

2      137.   Plaintiffs bring this claim in furtherance of the public interest.  They seek no

3   more or less relief for themselves than they seek for all members of the Lottery Class.

4                            **VII.  PRAYER FOR RELIEF**

5      Plaintiffs, on behalf of themselves and members of the Classes, request the following

6   relief:

7      (a)    That the Court enter an order certifying the Classes, appointing Plaintiffs as the

8   representatives of the Classes, and appointing counsel for Plaintiffs as counsel for the Classes;

9      (b)    That the Court enter an order declaring that Trion's actions violate the UCL, the

10   FAL, and the CLRA;

11      (c)    That the Court enter an injunction preventing further unfair and misleading

12   practices by Trion;

13      (d)    That the Court order Trion to make restitution to Plaintiffs and members of the

14   Discount Class for purchases in the ArcheAge Marketplace on which they did not receive a

15   10% discount;

16      (e)    That the Court order Trion to make restitution to Plaintiffs and members of the

17   Lottery Class for amounts paid to Trion for supply crates;

18      (f)    That the Court grant Plaintiffs and the Classes their reasonable attorneys' fees as

19   well as the costs and expenses of prosecuting this suit; and

20      (g)    That the Court award such other relief as may be just and proper.

21

                           **VIII.  JURY DEMAND**

22

23      Plaintiffs demand a trial by jury on all claims so triable.

24   Dated: September 8, 2015             RAM. OLSON, CEREGHINO
                                     & KOPCZYNSKI LLP

25

26                   By:                                                  
                                 Susan S. Brown, CSB #287986

27                                  Email: sbrown@rocklawcal.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Michael F. Ram, CSB #104805
Email: mram@rocklawcal.com
Karl Olson, CSB #104760
Email: kolson@rocklawcal.com
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

Toby J. Marshall
Email: tmarshall@tmdwlaw.com
TERRELL MARSHALL DAUDT
    & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

Venkat Balasubramani, CSB #189192
Email: venkat@focallaw.com
Sean M. McChesney
Emails: sean@focallaw.com
FOCAL PLLC
800 Fifth Avenue, Suite 4100
Seattle, Washington 98104
Telephone: (206) 923-9282
Facsimile: (206) 260-3966

*Attorneys for the Plaintiffs Aaron Van Fleet
and Paul Ovberg*

1    **AFFIDAVIT**

2    I, Susan S. Brown, declare as follows:

3    1.    I am an attorney with the law firm of Ram, Olson, Cereghino, & Kopczynski

4    LLP, counsel for Plaintiffs Aaron Van Fleet, Paul Ovberg and James Longfield in this action. I

5    am admitted to practice law in California and before this Court, and am a member in good

6    standing of the State Bar of California. This declaration is made pursuant to California Civil

7    Code section 1780(d). I make this declaration based on my research of public records and upon

8    personal knowledge and, if called upon to do so, could and would testify competently thereto.

9    2.    Based on my research and personal knowledge, Defendant Trion Worlds, Inc.

10   resides and does business within San Mateo County. The transactions at issue took place in

11   San Mateo County.

12   I declare under penalty of perjury under the laws of the United States and the State of

13   California this 8th day of September, 2015 in San Francisco, California, that the foregoing is

14   true and correct.

15

16   Susan S. Brown

17

18

19

20

21

22

23

24

25

26

27