IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON VAN FLEET, PAUL OVBERG, and JAMES LONGFIELD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRION WORLDS, INC.,<br><br>Defendant.<br>_____ / | No. C 15-04721 WHA<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND, DENYING PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES, AND DECLINING TO RULE ON DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

**INTRODUCTION**

In this putative class action for false advertising and unfair competition involving video games, defendant seeks to enforce an arbitration clause in the terms of use for its service, and plaintiffs move to remand the case to state court based on a forum-selection clause in the licensing agreement for the specific game at issue. Plaintiffs also seek attorney's fees and costs incurred as a result of removal. For the reasons stated below, plaintiffs' motion to remand is **GRANTED**. Plaintiffs' request for attorney's fees and costs is **DENIED**. This order declines to rule on defendant's motion to compel arbitration, that being more appropriately decided on remand by the agreed-on forum.

**STATEMENT**

Plaintiffs Aaron Van Fleet, Paul Ovberg, and James Longfield played a massively multi-player online role-playing game, ArcheAge, published by defendant Trion Worlds, Inc. In

1    order to play the game, users downloaded software called a "game client," which connected to
2    Trion's servers in order to compose the gaming environment. Although Trion marketed
3    ArcheAge as "free to play," it made certain aspects of the game accessible only to players
4    designated with "Patron" status, generally available via a paid monthly subscription.
5    Additionally, Trion enabled players to purchase virtual items in the game such as clothing,
6    animal "mounts," and "gliders," which gave their characters in the game abilities such as faster
7    transportation within the gaming environment. Players purchased virtual items in the in-game
8    marketplace with special virtual currency that they could purchase from Trion with real-world
9    money (Compl. ¶¶ 9–21).

10   Just before Trion launched ArcheAge, it sold a number of "founder's packs," which
11   conferred Patron status on purchasers for a period of time without requiring them to pay the
12   monthly fee (the time period varied based on the kind of founder's pack purchased). Trion also
13   advertised that paid subscribers would receive a "10% discount on Marketplace purchases
14   (available after launch)" (Compl. ¶ 22). Trion did not, however, provide the 10% discount at
15   the time it launched ArcheAge, but instead informed players the discount would be available at
16   some indeterminate time after launch. This outraged our plaintiffs. Ultimately, Trion offered
17   an "equitable solution" to players' complaints in the form of a 10% "bonus" on any in-game
18   currency that players purchased after subscribing via their founders packs (Compl. ¶¶ 23–32).

19   Generally, players purchased specific virtual items in the ArcheAge marketplace to be
20   used by their characters immediately; however, players could also purchase "supply crates,"
21   which contained a "random selection" of virtual items including high-value and rare items.
22   Players could not discern what items the supply crates contained until after purchase, and Trion
23   did not disclose the odds of receiving the high-value or rare virtual items in a supply crate
24   (Compl. ¶¶ 32–37).

25   Our plaintiffs each purchased a founder's pack for ArcheAge and purchased at least one
26   supply crate in the in-game marketplace. They now bring various claims against Trion for
27   violation of California's Consumer Legal Remedies Act, False Advertising Law, and Unfair

Competition Law, among others, arising from Trion's failure to provide the promised 10% discount and its use of the supply crates to operate an allegedly illegal online lottery. They seek to represent a putative class of other ArcheAge players that purchased paid subscriptions or supply crates, although the class allegations are of no moment on the instant motions.

Each plaintiff's respective relationship with Trion was governed by two agreements: Trion's Terms of Use, of which each plaintiff indicated his acceptance upon creating a Trion account, and the ArcheAge End-User Licensing Agreement, of which each plaintiff indicated his acceptance upon downloading the ArcheAge game software. Plaintiffs do not dispute that they indicated their acceptance of these agreements, although they contend the arbitration clause in the Terms of Use agreement is unenforceable.

The issue presented by each of the instant motions is which of those agreements governs this dispute and, consequently, which forum is appropriate to hear it. The pertinent provisions in each agreement are now described in turn.

**1.    TRION TERMS OF USE.**

Before our plaintiffs could play ArcheAge (or any other game published by Trion), Trion required each of them to sign up for a free user account on Trion's website. As part of the online account registration process, each plaintiff was presented with a hyperlink to Trion's Terms of Use agreement and required to check a box indicating they had read and agreed to the Terms of Use before continuing the registration process.

The preamble of the Terms of Use indicated the scope of the agreement and noted that the use of Trion's games also implicated each specific game's end-user licensing agreement (Kim Decl., Exh. A):

> Your use of the Site, Account, Game(s), Game Client(s) and/or Service is subject to this Terms of Use and Trion's Privacy Policy, incorporated herein by Reference. Your use of a Game and/or Game Client (including any Game-related Virtual Items which may be offered in connection with such Game) is further subject to such Game's EULA.

3

The Terms of Use included an arbitration provision under a bold heading "Dispute Resolution and Governing Law," which provided, in pertinent part (*id.* ¶ 26):

> **B.** Binding Arbitration. If you and Trion are unable to resolve a Dispute through informal negotiations, either you or Trion may elect to have the Dispute (except those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration. Any election to arbitrate by one party shall be final and binding on the other. . . . . The determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator.
>
> * * *
>
> **C.** Restrictions. You and Trion agree that any arbitration shall be limited to the Dispute between Trion and you individually.
>
> ***
>
> **D.** Exceptions to Informal Negotiations and Arbitration. You and Trion agree that the following Disputes are not subject to the above provisions concerning informal negotiations and binding arbitration: (1) any Disputes seeking to enforce or protect, or concerning the validity of, any of your or Trion's intellectual property rights; (2) any Dispute related to, or arising from, allegations fo theft, privacy, invasion of privacy or unauthorized use; and (3) any claim for injunctive relief.
>
> **E.** Location. . . . If you are a resident of the United States, any arbitration will take place at any reasonable location within the United States convenient for you.

The arbitration provision did not indicate that it would supersede any forum-selection provisions in later agreements.

Finally, the Terms of Use included an integration clause (*id.* ¶ 27) (emphasis added):

> This Terms of Use Agreement is the complete and exclusive statement of the agreement between you and Trion concerning the Service, and this Agreement supersedes any prior or contemporaneous agreement, either oral or written, and any other communication with regard thereto between you and Trion; provided however that this Agreement is in addition to, and does not replace or supplant, any applicable Game EULA or Trion's Privacy Policy. *In the event of a conflict or inconsistency between the terms and conditions of this Agreement and a Game EULA, the terms and conditions of the Game EULA shall supersede any such terms and conditions in this Agreement.*

**2.   ARCHEAGE END-USER LICENSING AGREEMENT.**

Trion also required our plaintiffs to separately register to use the specific game, ArcheAge, and to download software for the game before they could play the game on their computers. In order to download the software, plaintiffs all had to agree to the ArcheAge End-User Licensing Agreement. The preamble to that agreement provided, in pertinent part (*id.*, Exh. B):

> THE ARCHEAGE END USER LICENSE AGREEMENT ("THE AGREEMENT") IS AN AGREEMENT BETWEEN YOU AND TRION WORLDS, INC. ("TRION") THAT GOVERNS YOUR USE OF THE SOFTWARE PROGRAM, INCLUDING, WITHOUT LIMITATION, ANY AND ALL UPDATES AND UPGRADES THERETO (COLLECTIVELY THE "GAME CLIENT").

In addition to various provisions detailing the scope of the license for use of the game software, the EULA included more than a full page of provisions relating to "Virtual Property," that described both parties' rights with regard to such items. It also provided, *inter alia*, that "Virtual Items may also be granted by Trion on a free, promotional or sale basis or, in certain circumstances, earned through gameplay," and that "Trion may revise the pricing for Virtual Items offered, including without limitation, subscription plans for such Virtual Items, at any time" (*id.* ¶¶ 7–7.7).

The EULA also included a "Fee and Billing Policy" that incorporated the Terms of Use by reference (which itself noted that use of games would be subject to each game's specific EULA). That provision further noted that "the Game will also offer an in-game shop for users who wish to purchase Virtual Items" and described additional billing procedures (*id.* ¶ 8).

The EULA also included a choice-of-law and forum-selection clause, which purported to apply to "any cause of action," not solely injunctive claims (which had been carved out of the arbitration clause in the Terms of Use) (*id.* ¶ 16):

> **Governing Law; Venue.** This Agreement is governed in all respects by the laws of the State of California and of the United States of America . . . . Both parties submit to personal jurisdiction in California and further agree that any cause of action related to this Agreement shall be brought in the County of San Mateo, State

of California (if under State law) or the Northern District of
California (if under federal law).

The EULA also included an integration clause, which provided, in pertinent part (*id.* ¶ 18):

> **Miscellaneous.** This Agreement sets forth the entire
> understanding and agreement between Trion and you with respect
> to the subject matter hereof.  If any provision of this Agreement is
> held to be invalid or unenforceable, such provision shall be struck
> and the remaining provisions shall be enforced.

\*           \*           \*

Plaintiffs commenced this action in the San Mateo Superior Court. Trion removed the case to federal court here in San Francisco pursuant to the diversity jurisdiction provision of the Class Action Fairness Act. Trion now moves to compel arbitration pursuant to Paragraph 26 of the Terms of Use. Plaintiffs move to remand the action to state court in San Mateo pursuant to Paragraph 16 of the EULA.

This order follows full briefing and oral argument.

## ANALYSIS

Trion argues that the arbitration clause in the Terms of Use requires plaintiffs to arbitrate their non-injunctive claims on an individual basis. Plaintiffs argue that the case should be remanded pursuant to the forum-selection clause in the EULA and that Trion's motion to compel arbitration should be decided in state court. Plaintiffs also seek attorney's fees and costs incurred as a result of removal.

**1.   REMAND.**

Trion contends that this action is governed solely by the Terms of Use and accordingly seeks to enforce the arbitration provision therein. By contrast, plaintiffs contend that their claims fall within the scope of the EULA, which included a forum-selection clause designating venue in San Mateo County (without any arbitration clause). In accordance with the EULA, plaintiffs commenced this action in San Mateo Superior Court. Trion removed this action pursuant to the diversity jurisdiction provisions of the Class Action Fairness Act.

6

It is true that plaintiffs' injuries arose, in part, from their respective purchases of founder's packs through their Trion accounts, which purchases were subject to the Terms of Use. Plaintiffs' injuries, however, *also* arose from Trion's failure to apply the promised 10% discounts on purchases of virtual items and its operation of an allegedly illegal lottery in the ArcheAge marketplace, an arena governed by the EULA. Trion attempts to limit the scope of the EULA solely to claims arising directly out of "the mere playing of the game," however, nothing in the EULA provided such a limitation (Def.'s Reply at 9). On the contrary, the Terms of Use directly stated that the EULA applied broadly to the *use* of the game client and of virtual items: "Your use of a Game and/or Game Client (including any Game-related Virtual Items which may be offered in connection with such Game) is further subject to such Game's EULA" (Kim Decl., Exh. A). The EULA itself provided that it "GOVERN[ED] YOUR USE OF THE SOFTWARE PROGRAM" (*id.*, Exh. B). Moreover, the EULA contained over a page and a half of provisions relating to the purchase and use of virtual items, as well as billing procedures (which incorporated the Terms of Use) (*id.* ¶¶ 7–7.8). Accordingly, plaintiffs' claims, which relate to their respective purchases of virtual items in the ArcheAge in-game marketplace, are subject to both the Terms of Use and the EULA.

The forum-selection clause in the EULA, titled "Governing Law; Venue," provided that "any cause of action related to this Agreement *shall* be brought in the County of San Mateo (if under state law)" (*id.*, Exh. B ¶ 16). The parties agree that all claims hereunder arise under state law; federal jurisdiction is pursuant to the diversity provision of CAFA. Our court of appeals has recognized that enforceable forum-selection clauses providing that "venue" for an action "shall" be in a specific location, as here, are mandatory and provide the *exclusive* forum for such actions. *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). Specifically, the agreement in *Docksider* provided, "[v]enue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia." *Id.* at 763. Our court of appeals held "this mandatory language ma[de] clear that venue, the place of suit, l[ay] exclusively in the designated county." *Id.* at 764.

7

Trion makes no effort to distinguish the language in the EULA from that considered in *Docksider*, nor does it contest the enforceability of that language. Trion merely contends that the EULA does not apply to the claims herein, so its forum-selection clause has absolutely no relevance. As discussed above, Trion is incorrect and the EULA will govern at least some of the claims herein. Accordingly, one issue is whether the forum-selection clause must be enforced notwithstanding Trion's right to removal under CAFA.

CAFA gives defendants in certain putative class actions a statutory right to removal, and plaintiffs concede that Trion has satisfied the requirements of CAFA. Although the diversity jurisdiction provision of CAFA (and the consequent right to removal) gives federal courts "original" jurisdiction over such actions, it does not provide *exclusive* jurisdiction in federal courts for such actions. *See* 28 U.S.C. 1332(d)(2).

Neither our court of appeals nor any other appellate court has addressed whether a mandatory forum-selection clause is enforceable notwithstanding a party's right to removal under CAFA, however, the undersigned addressed this issue directly in *Guenther v. Crosscheck Inc.*, No. 09-1106, 2009 WL 1248107, *6 (N.D. Cal. Apr. 30, 2009). There, the plaintiff sought to remand an action that the defendant had removed under CAFA, on the basis that a clause labeled "VENUE" in the agreement between the parties provided:

> THE PARTIES AGREE THAT ANY ACTION ARISING OUT OF THE NEGOTIATION, EXECUTION OR PERFORMANCE OF THE TERMS AND CONDITIONS OF THIS AGREEMENT SHALL BE BROUGHT IN THE COURTS OF SONOMA COUNTY, CALIFORNIA.

*Id.* at *1. Under *Docksider*, the undersigned held that clause constituted the parties' agreement that the courts of Sonoma County provided the exclusive venue for disputes arising from that agreement. Accordingly, "[a]lthough CAFA may otherwise afford this Court jurisdiction, however, CAFA does not trump a valid, enforceable and mandatory forum-selection clause by which [the] parties agreed to litigate in state court — at least, defendants cite no provision so providing nor any authority so suggesting." *Id.* at *6.

8

Every decision that has addressed the conflict between a mandatory forum-selection clause and the right to removal under CAFA has enforced the forum-selection clauses at issue, CAFA notwithstanding. *Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 551 (W.D. Tex. 2014) (Judge David Alan Ezra) (citing *Guenther*); *Roma Pizzeria v. Harbortouch*, No. 13-0058, 2013 WL 4008914, *3 n.1 (D.N.J. Aug. 5, 2013) (Judge Joel A. Pisano) (citing *Guenther* and addressing a provision that designated exclusive jurisdiction in state court, not just venue); *Norris v. Commercial Credit Counseling Services, Inc.*, No. 09-206, 2010 WL 1379732, *3 (E.D. Tex. Mar. 31, 2010) (Judge Richard A. Schell) (citing *Guenther*); *Piechur v. Redbox Automated Retail, LLC*, No. 09-984, 2010 WL 706047, at *1 (S.D. Ill. Feb. 24, 2010) (Judge J. Phil Guilbert) (addressing a provision that designated exclusive jurisdiction in state court, not just venue). In the absence of any contrary authority and in light of uniform holdings in other district courts, this order reaffirms the holding of *Guenther*: CAFA does not trump a valid, enforceable and mandatory forum-selection clause by which the parties agreed to litigate in state court.

The Terms of Use required arbitrability to be determined "by a court rather than an arbitrator" (Kim Decl., Exh. A ¶ 26(b)). Thus, the arbitrability of this dispute must be resolved in the parties' chosen venue for state-law claims subject to the EULA — San Mateo Superior Court. Trion fails to address the possibility that, as determined above, both agreements apply, requiring any determination of arbitrability to occur in the forum designated in the EULA.

This case is hereby **REMANDED** to San Mateo Superior Court. To be clear, this order does not address whether the forum-selection clause in the EULA supersedes the arbitration provision altogether. Which claims, if not all, should be arbitrated is for the state court to decide.

### 2. ATTORNEY'S FEES AND COSTS.

Plaintiffs seek attorney's fees and costs incurred as a result of removal. An award of attorney's fees and costs in this circumstance is appropriate if there was no "objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

Although Trion's argument for removal ultimately failed, it did not lack an objectively reasonable basis for believing removal was appropriate. Trion reasonably, albeit incorrectly, believed that only the Terms of Use applied to the claims in this action and that the forum-selection clause in the EULA was not a factor. Indeed, plaintiffs concede that Trion satisfied the elements of removal under CAFA.

Accordingly, Trion had an objectively reasonable basis for removal, so an award of attorney's fees is not appropriate.

## CONCLUSION

For the reasons stated above, the case is **REMANDED** to San Mateo Superior Court. Plaintiffs' request for attorney's fees and costs is **DENIED**. This order declines to rule on Trion's motion to compel arbitration, which should be addressed to the state court. The Clerk shall please **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: January 12, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE